IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JORGE ALBERTO RODRIGUEZ,<br><br>                    Petitioner,<br><br>          vs.<br><br>ROB JEFFREYS, Director of Nebraska Department of Correctional Services; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; DAREN MARGOLIN, Director, Executive Office for Immigration Review; TODD LYONS, Acting Director, Immigration and Customs Enforcement; PETER BERG, Director, St. Paul ICE Field Office;  DEPARTMENT OF HOMELAND SECURITY,  EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, IMMIGRATION AND CUSTOMS ENFORCEMENT, and  OMAHA IMMIGRATION COURT,<br><br>                    Respondents. | **8:25CV714**<br><br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

In this action for habeas corpus relief pursuant to 28 U.S.C. § 2241, Petitioner Jorge Alberto Rodriguez, an undocumented alien who has lived in the United States since 2006, requests that the Court find that he is unlawfully detained by Immigration and Customs Enforcement (ICE) pending the completion of his removal proceedings. Filing 1 at 1 (¶ 1). He asserts that "[b]ecause Respondents are detaining Petitioner in violation of the declaratory judgment issued in *Maldonado Bautista [v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.)], the Court should accordingly order that within one day, Respondent DHS must release Petitioner" or "[a]lternatively, the Court should order Petitioner's release unless Respondents provide a bond hearing under 8 U.S.C. § 1226(a) within seven days." Filing 1 at 3 (¶¶ 12–13). In response to a motion by Petitioner, Filing

3, and pursuant to 28 U.S.C. § 2243, the Court entered an Order to Show Cause that directed Respondents to file a Return and set a hearing on the Petition for December 19, 2025. Filing 12 at 7–8. Following the hearing, the Court now enters this ruling on the Petition.

The Court has denied habeas petitions pursuant to § 2241 on behalf of two other undocumented aliens that involved some of the same issues raised by Alberto Rodriguez. *See Vargas Lopez v. Trump*, No. 8:25CV526, ___ F. Supp. 3d ___, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Ramirez Melgar v. Bondi*, No. 8:25cv555, 2025 WL 3496721, at *1 (D. Neb. Dec. 5, 2025). This case presents some different issues, as it shifts the focus from the statutes involved and the BIA's decision in *Matter of Hurtado*, 29 I&N Dec. 216, 219–220 (BIA 2025), to the effect of three decisions of the United States District Court for the Central District of California in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM. Nevertheless, for the reasons stated below, Alberto Rodriguez's Petition is denied.

## I.  SUMMARY OF THE LEGAL CONTEXT

The Court believes some legal context is helpful to understanding the facts, proceedings, and arguments in this case. Thus, the Court begins with a summary of the legal context including the key statutory provisions and the decisions in *Maldonado Bautista* on which Alberto Rodriguez relies for relief.

### A.  Key Statutory Provisions

#### 1.  *Statutes Relating to Habeas Corpus Relief*

Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Alberto Rodriguez. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien]

Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))).

The United States Supreme Court has also explained,

District courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a). We have interpreted this language to require "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden [v. 30th Judicial Circuit Court of Ky.]*, 410 U.S. [484,] 495, 93 S.Ct. 1123 [(1973)].

*Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). Thus, the Supreme Court concluded, "The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443.

The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243. Among other things, § 2243 requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. Consequently, this Court directed the Respondents to show cause why the Court should not grant a writ for Alberto Rodriguez and held a hearing on the Petition. Nevertheless, District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

3

2. *Key Provisions of the INA*

Two provisions of the Immigration and Nationality Act (INA) at issue here provide for detention of aliens. Aliens detained pursuant to INA section 235(b), codified at 8 U.S.C. § 1225(b), are not eligible for release on bond. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). In contrast, INA section 236(a), codified at 8 U.S.C. § 1226(a), "permits the Attorney General to release [specified] aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Jennings*, 583 U.S. at 303 (quoting 8 U.S.C. § 1226(a)). Alberto Rodriguez contends that he was detained pursuant to § 1226(a), so that he was entitled to release on bond on an immigration judge's order, but the Immigration Judge (IJ) denied his request for release on bond for lack of jurisdiction. Filing 1 at 5 (¶ 36). Respondents contend that Alberto Rodriguez was detained pursuant to § 1225(b), so that the Immigration Judge did not have jurisdiction to release him on bond. Filing 16 at 3.

## B. The *Maldonado Bautista* Decisions

As mentioned at the outset of this Memorandum and Order, Alberto Rodriguez's central request is that the Court find his detention by ICE pending the completion of his removal proceedings unlawful "[b]ecause Respondents are detaining Petitioner in violation of the declaratory judgment issued in *Maldonado Bautista*." Filing 1 at 3 (¶ 12). The *Maldonado Bautista* litigation in the United States District Court for the Central District of California arose from a Petition for Writ of Habeas Corpus by individuals in ICE custody alleging that they were improperly detained under 8 U.S.C. § 1225 rather than 8 U.S.C. § 1226. An order filed in *Maldonado Bautista* on July 28, 2025, had granted an application for a temporary restraining order (TRO) enjoining the respondents from detaining the petitioners unless they were provided with individualized bond hearings before an IJ and prohibiting respondents from relocating the

petitioners outside the district pending final resolution of that litigation. *See Bautista v. Santacruz (Maldonado Bautista I),* 2025 WL 3289861, at *2 (C.D. Cal. Nov. 20, 2025) (explaining the July 28, 2025, order). This Court will briefly summarize the three key decisions that followed.

      *1.  The Order Granting a Motion for Partial Summary Judgment*

In the first key decision at issue here—filed November 20, 2025, and identified here as *Maldonado Bautista I*—the judge considered a Motion for Partial Summary Judgment as to the petitioners' First Amended Complaint seeking class relief. *Maldonado Bautista I,* 2025 WL 3289861, at *1. The Motion for Partial Summary Judgment sought a declaration of unlawfulness of a "new policy" of the Department of Homeland Security (DHS) requiring ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). *Maldonado Bautista I,* 2025 WL 3289861, at *1–2. The judge framed the issue as follows:

> Petitioners argue that § 1226(a)—not § 1225(b) (2)—applies to them and those similarly situated. [Motion at 23–36]. Respondents again argue that § 1225(b)(2) is the governing authority for "applicants for admission", which includes Petitioners. [Opp. at 20–29]. In simpler terms, the parties dispute whether Petitioners are "applicants for admission," a category dispositive of whether Petitioners are subject to mandatory detention pending their removal proceedings. If Petitioners are "applicants for admission," § 1225 governs, and they would not be entitled to bond hearings under § 1226(a).

*Maldonado Bautista I,* 2025 WL 3289861, at *7. Based on her statutory interpretation, the judge concluded, "Respondents' argument is at odds with the plain language of the INA." *Id.* at *8. Somewhat more specifically, the judge concluded, "Respondents unacceptably collapse § 1226 into nonexistence under a wide-reaching interpretation of 'applicants for admission.'" *Id.* at *11. Accordingly, the judge granted the petitioner's Motion for Partial Summary Judgment. *Id.* Although the declaration is not expressly stated, it appears to be that DHS's alleged policy requiring ICE employees to consider anyone arrested in the United States and charged with being

inadmissible as an "applicant for admission" under § 1225(b)(2)(A) is unlawful. *See id.* at *1 (defining the "new policy" in this way). However, the judge denied the petitioners' request to enter final judgment. *Id.* Also, injunctive relief was not an issue before the court in *Maldonado Bautista I.*

### 2. The Order Granting Class Certification

In *Maldonado Bautista v. Santacruz (Maldonado Bautista II)*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the court granted the petitioners' Motion for Class Certification. The court concluded that the petitioners had satisfied the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) and the requirements for a nationwide class under Federal Rule of Civil Procedure 23(b)(2). *Maldonado Bautista II*, 2025 WL 3288403, at *3–9. The court rejected the respondents' arguments that 8 U.S.C. § 1252(f) prohibits class-wide relief on behalf of aliens and that class-wide relief was inappropriate. *Id.* at *7–9. Consequently, the court certified a class defined as follows:

- **Bond Eligible Class:** All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista II*, 2025 WL 3288403, at *9. The court explained that when considering the class certification determination with the prior Motion for Summary Judgment Order, "the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole," that is, the declaratory relief granted to the individual petitioners in *Maldonado Bautista I*, 2025 WL 3289861. *Id.*

6

### 3. The Order Granting in Part Petitioners' Request for Reconsideration

On December 18, 2025—the eve of the hearing on Alberto Rodriguez's Petition before this Court—the court in *Maldonado Bautista* entered an Order Granting in Part and Denying in Part Petitioners' Ex Parte Application for Reconsideration or Clarification. *Maldonado Bautista v. Santacruz (Maldonado Bautista III)*, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025). The court explained that after its ruling on the Motion for Summary Judgment and the Motion for Class Certification, the petitioners were "seeking clarification to 'eliminate any doubt regarding [Defendant Respondents'] legal obligations and ensure [their] compliance.'" *Id.* at *1. More specifically,

> Petitioners' Application requests the following from the Court: (1) appoint additional class counsel under Federal Rule of Civil Procedure 23(g), (2) reconsider the MSJ Order or clarify the Class Certification Order as to final or binding class-wide declaratory relief, (3) direct entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b), and (4) expressly confirm that the MSJ Order both declared *and vacated* the challenged agency actions.

*Maldonado Bautista III*, 2025 WL 3713982, at *2 (emphasis in the original).

The *Maldonado Bautista* court granted in part and denied in part the petitioners' Application as follows:

- the Application is GRANTED as to the additional class counsel;

- the Application is DENIED as to including vacatur of [*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)] in the judgment;

- the Application is GRANTED as to the clarification that the MSJ Order declared the DHS Policy unlawful and granted vacatur under the APA; and

- the Application is GRANTED as to the prior request to enter final judgment. The Court hereby ENTERS final judgment as to Counts I, II, and III.

*Maldonado Bautista III*, 2025 WL 3713982, at *7. The decision in *Maldonado Bautista III*, 2025 WL 3713982, does not grant, clarify, or extend any injunctive relief.

7

## II.  BACKGROUND TO THIS CASE

### A.  Alberto Rodriguez's Habeas Petition

In the "Introduction" to his Petition for Writ of Habeas Corpus, Alberto Rodriguez alleges,

1.  Petitioner is a 50-year-old male, native and citizen of El Salvador who has lived in the United States since 2006. Petitioner was arrested by immigration officials and is now detained by Immigration and Customs Enforcement ("ICE") pending the completion of him removal proceedings.

2.  Petitioner requested a bond review hearing in the Omaha Immigration Court. However, the Immigration Judge denied Petititoner's [sic] request, concluding it had no jurisdiction to hold a bond hearing or release him from custody, citing a decision by the Board of Immigration Appeals ruling that all aliens who are present in the United States without inspection do not qualify for bond. *See Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

3.  Additionally, the Immigration Judge did not abide by the declaratory judgement issued on behalf of the certified class in *Maldonado Bautista v. Santacruz*. The district court in *Maldonado* granted partial summary judgment and certified a nationwide bond eligible class which held that the Bond eligible class members are detained under 8 U.S.C. § 1226(a), and thus may not be denied consideration for release on bond under § 1225(b)(2)(A). *Maldonado Bautista*, 2025 WL 3289861, at *11.

Filing 1 at 1–2 (¶¶ 1–3).

The Order of Immigration Judge, dated December 3, 2025, addressing Alberto Rodriguez's request for a change of custody status, shows a check mark in the box before "Denied, because" with the explanation, "Matter of YAJURE HURADO, 29 I&N Dec. 216 (BIA 2025) applies. The I.J. does not have jurisdiction to consider respondent for a bond." Filing 1 at 14. The IJ provided the following further explanation:

The November 20, 2025, partial grant of summary judgment and November 25, 2025, grant of class certification in *Bautista v. Noem*, 5 :25-cv-0 l 873-SSS-BFM (C.D. Cal.), granted class certification and partial summary judgment for the plaintiffs in that case, but did not issue a class-wide declaratory judgment. The court also did not issue a class-wide injunction, which would not be permitted by law. Rather, the court set a January 9, 2026 joint status report deadline and January 16, 2026 status conference. Until and unless the *Bautista* court issues a class-wide declaratory judgment or injunction, the *Bautista* court's opinion and partial grant of summary judgment does not constitute a judgment. *See, e.g*., Fed. R. Civ. P.

54(b) (second sentence). As such, they do not have preclusive effect with respect to other cases. Rather, there is currently no declaratory relief with respect to other cases filed by people who are now *Bautista* class members raising claims concerning the proper interpretation of the mandatory detention provisions. If in the future the *Bautista* court issues a class-wide declaratory judgment, the Court would consider respondent for bond.

Filing 1 at 14.

Alberto Rodriguez alleges that he is a member of the Bond Eligible Class defined in *Maldonado Bautista*. Filing 1 at 2 (¶ 7). He alleges,

> 8. After apprehending Petitioner on November 18, 2025, the DHS placed him in removal proceedings pursuant to 8 U.S.C. § 1229a. DHS has charged Petitioner as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection.

Filing 1 at 2 (¶ 8). Alberto Rodriguez asserts that *Maldonado Bautista* has full force and effect, but "Respondents continue to flagrantly defy the judgment in that case and continue to subject Petitioner to unlawful detention despite his clear entitlement to consideration for release on bond as a Bond Eligible Class member." Filing 1 at 3 (¶ 10).

Alberto Rodriguez asserts several causes of action in his habeas petition. His first cause of action alleges "Violation of 8 U.S.C. § 1226(a) and Associated Regulations," based on his assertion that he was entitled to but has not been provided with a bond hearing, making his continued detention unlawful. Filing 1 at 10–11 (¶¶ 54–57). Alberto Rodriguez's second cause of action alleges "Violation of Fifth Amendment Right to Due Process (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))." Filing 1 at 11 (¶¶ 58–60). His third cause of action alleges "Violation of Fifth Amendment Right to Due Process (Failure to Provide an Individualized Hearing for Domestic Civil Detention)." Filing 1 at 11–12 (¶¶ 61–65). His fourth cause of action alleges "Violation of Fifth Amendment Right to Due Process (Substantive Due Process)." Filing 1 at 12 (¶¶ 6–7). Alberto Rodriguez's fifth cause of action alleges "Violation of Administrative Procedure Act (5 U.S.C. § 706)," and alleges in essence, "The BIA's decision in *Matter of Hurtado*

is unlawful because it violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law." Filing 1 at 12 (¶¶ 68–70). His sixth and last cause of action alleges "Violation of the INA; Request for Relief Pursuant to *Maldonado Bautista*." Filing 1 at 13 (¶¶ 71–74).

Alberto Rodriguez requests that the Court provide the following relief:

1. Assume Jurisdiction over this matter;

2. Declare that Petitioner's detention is unlawful;

3. Declare that Petitioner is detained pursuant to 8 U.S.C. § 1226 and is therefore entitled to a bond hearing upon request;

4. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if he is not provided with a bond hearing within seven (7) days after the Court's order; [and]

5. Grant any further relief this Court deems just and proper.

Filing 1 at 13 (Prayer for Relief).

### B.  Proceedings on the Petition

On December 12, 2025, the same day that he filed his Petition, Alberto Rodriguez filed a Motion for Order to Show Cause pursuant to 28 U.S.C. § 2243, "request[ing] that this Court 'forthwith' issue an order directing Respondents to show cause why the Petition for a Writ of Habeas Corpus filed by Petitioner should not be granted." Filing 3 at 1 (¶ 1). On December 15, 2025, the Court entered an Order to Show Cause. Filing 12. The Court ordered *inter alia* that Respondents were to make a return certifying the true cause of Alberto's Rodriguez's detention and why his Petition should not be granted not later than Wednesday, December 17, 2025, and granted Alberto Rodriguez leave to file a reply, if any, not later than Thursday, December 18, 2025. Filing 12 at 7. The Court also set a hearing on Alberto Rodriguez's Petition for Friday, December 19, 2025. Filing 12 at 8.

On December 16, 2025, Federal Respondents—*i.e.*, all Respondents other than Rob Jeffreys[1]—filed a Motion for Extension of Time to File a Responsive Pleading on the ground that Respondents had not been served. Filing 14. However, Federal Respondents then filed a Motion to Withdraw that Motion on December 17, 2025, after receiving service. Filing 15. By Order filed December 17, 2025, the Court granted the Federal Respondents' Motion to Withdraw and reiterated the prior schedule for briefing and a hearing. Filing 19. On December 17, 2025, the Federal Respondents filed a Response to the Petition for Writ of Habeas Corpus, Filing 16; a supporting Index, Filing 17; and the Declaration of a deportation officer, Filing 18. On the morning of December 19, 2025, before the hearing, Alberto Rodriguez filed an Index of Evidence in Support of His Petition for Writ of Habeas Corpus consisting of a copy of the decision in *Maldonado Bautista III*, 2025 WL 3713982. Filing 20; Filing 20-1.

At the hearing, the parties focused on the impact of the decisions in *Maldonado Bautista*. However, Alberto Rodriguez's counsel also admitted that Alberto Rodriguez is in the country illegally; that he has been working in the United States without lawful employment status; that he wishes to remain in the United States; that he has filed an application for relief from removal; and that he intends to stay in the United States. The Federal Respondents acknowledged that the situation is an evolving one in light of the decision in *Maldonado Bautista III*, 2025 WL 3713982, which the Federal Respondents stated—and the record in that case shows, No. 5:25-cv-01873-SSS-BFM, CM/ECF #95—has been appealed to the Ninth Circuit Court of Appeals. Under the circumstances, this Court determined that the appropriate course, as justice requires, was to delay ruling for a short time based on the Court's expectation that the appeal in *Maldonado Baustista*

---

[1] The record does not show that Rob Jeffreys has ever been served, and he did not appear or otherwise participate in the briefing or the hearing on Alberto Rodriguez's Petition.

would likely be resolved quickly. Consequently, the Court requested a statement of the Federal Respondents' official position by the end of the day on December 23, 2026.

The docket in *Maldonado Bautista* shows that on December 19, 2025, the case was assigned Appeal Docket No. 25-7958 and that the Ninth Circuit Court of Appeals set a briefing schedule, Case No. 5:25-cv-01873-SSS-BFM, CM/ECF #96. The docket of the case in the Ninth Circuit Court of Appeals shows "Appeal Opening Brief Due (Appellant) 3/12/2026, Appeal Answering Brief Due (Appellee) 4/13/2026." Appeal Case No. 25-7958, CM/ECF #2. Thus, it now appears unlikely that the Ninth Circuit Court of Appeals will rule on the appeal in *Maldonado Bautista* as quickly as this Court anticipated at the hearing. On December 23, 2025, the Federal Respondents filed the anticipated Supplemental Response setting out their position on why Alberto Rodriguez's Petition should be denied notwithstanding the decisions in *Maldonado Bautista*. Filing 22.

Therefore, the Court concludes that there is no reason to delay this ruling on Alberto Rodriguez's Petition.

### III. LEGAL ANALYSIS

#### A.  The Impact of Decisions in *Maldonado Bautista*

As the Court indicated at the beginning of this ruling, the key difference between this case and prior cases in this Court by undocumented aliens seeking habeas corpus relief is that this case focuses on the effect of the three decisions of the United States District Court for the Central District of California in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM. Thus, the Court begins its analysis with that issue.

*1.  The Parties' Arguments*

In his Petition, Alberto Rodriguez argues that *Maldonado Bautista I* has full force and effect, but "Respondents continue to flagrantly defy the judgment in that case and continue to

subject Petitioner to unlawful detention despite his clear entitlement to consideration for release on bond as a Bond Eligible Class member." Filing 1 at 3 (¶ 10) (citing 28 U.S.C. § 2201(a)). Thus, he asserts that Respondents are detaining him in violation of the declaratory judgment issued in *Maldonado Bautista I*. Filing 1 at 3 (¶ 12). He argues that the decision in *Maldonado Bautista II* certifying a class extended the declaratory judgment to the certified class. Filing 1 at 10 (¶ 52). At the hearing, Alberto Rodriguez focused on the effect of the decision in *Maldonado Bautista III*, issued the day before. He asserts that there is now a final judgment on behalf of all class members in the case, which provides a nationwide class including him with injunctive relief. Alberto Rodriguez also points out that while the decisions in *Maldonado Bautista* have been appealed, the Ninth Circuit has not stayed the judgment, so his position is that the district court's final judgment is in effect, and this Court should follow that decision.

At the hearing on Alberto Rodriguez's Petition, Federal Respondents argued that secondary sources in particular indicate that it is improper to apply *res judicata* to a class-wide declaratory judgment in another court when that decision is already on appeal. Federal Respondents also argued that the jurisdiction of the California federal district court was "dubious" because Supreme Court precedent is clear that a court cannot exercise jurisdiction over a habeas action where the petitioner is outside the district. Federal Respondents' arguments in their Supplemental Response are consistent with those they offered at the hearing. They summarize their position as follows:

> The Court should deny the habeas petition in this case as the Federal Respondents argued previously. The December 18, 2025 partial final judgment in *Bautista v. Noem*, No. 5:25-CV-1873 (C.D. Cal. Dec. 18, 2025), ECF No. 94, is neither binding nor applicable here and presents no basis for granting the petition. First, the *Bautista* declaratory judgement is void with respect to petitioners and custodians outside the Central District of California because it was issued despite a palpable lack of jurisdiction. Second, the Court should not give preclusive effect to the declaratory judgment because it is on appeal, creating a serious risk of inconsistent judgments and unfair results if the *Bautista* judgment is reversed or vacated on appeal. Third, issue preclusion is inapplicable here, particularly as

13

preclusion principles apply with less force both against the government and in habeas corpus proceedings. And finally, the Court need not await a ruling staying or vacating the *Bautista* declaratory judgment before declining to give it preclusive effect.

Filing 22 at 1–2. The Court will address details of these arguments to the extent that the Court

finds necessary in its analysis below.

2.  *The Decisions in Maldonado Bautista Are Not Binding on This Court*

a.  The *Maldonado Bautista* Decisions Are Void as to Class Members and Custodians Outside of the Central District of California

As a preliminary matter, the Court concludes that it has the authority to inquire as to the

jurisdiction of the court in *Maldonado Bautista*. The District Court for the Northern District of

Texas recently concluded that it was not bound by the decisions in *Maldonado Bautista*,

As Justice Story remarked, the traditional comity between courts "does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given." *Old Wayne Mut. Life Ass'n v. McDonough*, 204 U.S. 8, 16, 27 S.Ct. 236, 51 L.Ed. 345 (1907) (quoting Joseph Story, Commentaries on the Constitution of the United States § 1313 (1833)). It is "a subject [that] may be inquired into every other court, when the proceedings in the former are relied upon, and brought before the latter, by a party claiming the benefit of such proceedings." *Williamson v. Berry*, 49 U.S. (8 How.) 495, 540, 12 L.Ed. 1170 (1850); *Old Wayne*, 204 U.S. at 16–17, 27 S.Ct. 236 (same). Indeed, traditional habeas proceedings normally could only challenge "the power and authority of the court" or other detaining authority "to act." *Brown v. Davenport*, 596 U.S. 118, 129, 142 S.Ct. 1510, 212 L.Ed.2d 463 (2022) (quotation omitted). While the conclusions of another court, when enforced onto a peer court, are generally "unassailable collaterally," an exception has always existed for "lack of jurisdiction." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85 (1939); *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03, 7 L.Ed. 650 (1830) (Marshall, C.J.) (same).

When the issuing court lacks jurisdiction, "its judgments and orders are nullities; they are not voidable, but simply void, and form no bar to a recovery sought ... in opposition to them; they constitute no justification, and all persons concerned in executing such judgments ... are considered in law as trespassers." *Williamson*, 49 U.S. at 541 (quoting *Elliott v. Piersol*, 26 U.S. (1 Pet.) 328, 329, 7 L.Ed. 164 (1828)); *Watkins*, 28 U.S. at 203 ("An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity[.]").

14

*Calderon Lopez v. Lyons*, No. 1:25-CV-226-H, 2025 WL 3683918, at *6 (N.D. Tex. Dec. 19, 2025). This Court concurs with the Judge in *Calderon Lopez* that this Court has the authority to inquire into the jurisdiction of the court in *Maldonado Bautista*.

As this Court explained in its summary of applicable habeas corpus law above in § I.A.1., the United States Supreme Court has explained,

> District courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a). We have interpreted this language to require "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden [v. 30th Judicial Circuit Court of Ky.]*, 410 U.S. [484,] 495, 93 S.Ct. 1123 [(1973)].

*Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). Thus, the Supreme Court concluded, "The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443.

Federal Respondents are correct that more recently, the Supreme Court explained that "[r]egardless of whether the detainees formally request release from confinement, because their claims for relief necessarily imply the invalidity of their confinement and removal . . ., their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (cleaned up). The Supreme Court then reiterated, "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *Id.* (quoting *Padilla*, 542 U.S. at 443). There is no question in this case that Alberto Rodriguez seeks relief that necessarily implies the invalidity of his confinement and removal, so his claims fall within the core of the writ of habeas corpus. *Id.*; *see also* Filing 1 at 13 (praying *inter alia* that the Court "[i]ssue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if he is not provided with a bond hearing within

seven (7) days after the Court's order"). It follows that jurisdiction lies only in the district of confinement. *Id.*

This Court has recognized this principle of subject-matter jurisdiction over § 2241 habeas petitions where the alien was no longer detained in this District. In a recent case involving another undocumented alien's § 2241 habeas petition challenging her detention by ICE pending the completion of her removal proceedings, this Court concluded that where there was no dispute that the petitioner was no longer confined in this District but had been transferred to confinement in the Woodbury County Jail in Sioux City, Iowa, this Court no longer had jurisdiction, and transfer to the Northern District of Iowa was appropriate. *See Genchi Garcia v. London*, No. 8:25CV624, 2025 WL 3540922, at *1 (D. Neb. Dec. 10, 2025) (citing *Padilla*, 542 U.S. at 442–43). Here, Alberto Rodriguez has never been detained in the Central District of California, so that jurisdiction over his Petition is not proper in that District; rather, jurisdiction remains proper in this District— and only this District. *See J.G.G.*, 604 U.S. at 672; *Padilla*, 542 U.S. at 442–43.

Furthermore, the Court concludes that even if as a general matter a "nationwide" class action seeking relief for what amounts to anyone in the United States in similar circumstances falls within a "class-action workaround" to a bar on "universal injunctions," *see Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025), such a "class-action workaround" is untenable in a habeas action. The purported "universal injunction" in the class action in the Central District of California in *Maldonado Bautista* runs afoul of the fundamental subject-matter jurisdiction principle in "core" habeas cases that the only proper district—especially for petitioners like Alberto Rodriguez who are not now confined in the Central District of California—is the district were the petitioners are confined. *Padilla*, 542 U.S. at 442–43. In other words, the Central District of California never had jurisdiction over Alberto Rodriguez's habeas action, even if he fit the definition of an eligible class

16

member, and this Court certainly is not bound by any decision of the court in *Maldonado Bautista*.

Thus, this Court reiterates its conclusion in a prior case involving an undocumented alien's petition

for habeas relief from ICE custody about the effect of the decisions in *Maldonado Bautista*:

> The fact that a District Judge in California interpreted the law differently on a summary judgment motion than the undersigned has does not somehow usurp or overrule all other judges in the United States Federal Courts, like this one, who see the issue differently. That decision is no more binding on this Court than any other district court decision that disagrees with this Court's interpretation of the applicable statutes.

*Ramirez Melgar v. Bondi*, No. 8:25CV555, 2025 WL 3496721, at *14 (D. Neb. Dec. 5, 2025).

The conclusion that the *Maldonado Bautista* court lacked jurisdiction to enter an injunction

that applied to Alberto Rodriguez is sufficient standing alone to deny Alberto Rodriguez's central

claim for habeas relief.[2]

      b.   The *Maldonado Bautista* Decisions Do Not Have Preclusive Effect

Federal Respondents also argue that giving preclusive effect to the *Maldonado Bautista*

declaratory judgment "contravenes" preclusion principles. Filing 22 at 6. More specifically,

Federal Respondents argue that the circumstances in this case counsel against applying issue

preclusion against the government. Filing 22 at 6.[3] They argue that the government is not in a

position identical to that of a private litigant because of the geographic breadth and nature of

---

[2] In addition to their challenge to the *Maldonado Bautista* court's jurisdiction over Alberto Rodriguez, Federal Respondents argue that this Court should not give preclusive effect to the declaratory judgment in that case because it is on appeal. Filing at 2. This argument appears to the Court to be a stop-gap argument for the Court to delay its ruling while the appeal plays out rather than an argument that completely resolves Alberto Rodriguez's Petition. Indeed, Federal Respondents argue that the problem of inconsistent judgments can be "avoided . . . by delaying further proceedings in the second action pending conclusion of the appeal in the first action." Filing 22 at 5 (citing *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882–83 (9th Cir. 2007) (citing Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *18A Federal Practice & Procedure: Jurisdiction 2d*. § 4433 (2002)). The Court finds it unnecessary to consider stop-gap arguments when application of other principles, such as jurisdiction over habeas cases, are dispositive.

[3] Federal Respondents also argue that granting relief to class members outside the Central District of California is neither "necessary [n]or proper" within the meaning of 28 U.S.C. § 2202. Filing 22 at 6. The Court declines to address that issue because it is not necessary to this Court's disposition of Alberto Rodriguez's Petition.

government litigation. Filing 22 at 6. As a consequence, Federal Respondents argue that the government is not subject to issue preclusion when the parties to the two lawsuits are not the same. Filing 22 at 6. Thus, they contend that "the government should not be precluded from litigating the issue of the proper detention authority here, where the Petitioner was not a named party to the prior *Bautista* litigation, but instead merely a member of a fundamentally flawed nationwide class." Filing 22 at 7. The Federal Respondents argue that preclusion is improper where various courts around the country have reached conclusions different from the *Maldonado Bautista* court on the statutory basis for detention. Filing 22 at 7–8 (citing cases). Indeed, Federal Respondents argue that it is doubtful that issue preclusion is appropriate in habeas cases. Filing 22 at 8.

Some time ago, the Supreme Court explained,

> Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel, like the related doctrine of res judicata, serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. In furtherance of those policies, this Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law limits. It has done so by abandoning the requirement of mutuality of parties, and by conditionally approving the "offensive" use of collateral estoppel by a non-party to a prior lawsuit.

*United States v. Mendoza*, 464 U.S. 154, 158–59 (1984) (internal quotation marks, citations, and footnotes omitted). The Supreme Court in *Mendoza* observed that "the party against whom the estoppel is sought is the United States; but . . . the party who seeks to preclude the government from relitigating the issue was not a party to the earlier litigation." *Id.* at 159. The Supreme Court then explained,

> A rule allowing nonmutual collateral estoppel against the government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court

grants certiorari. Indeed, if nonmutual estoppel were routinely applied against the government, this Court would have to revise its practice of waiting for a conflict to develop before granting the government's petitions for certiorari.

*Mendoza*, 464 U.S. at 160.[4] The Supreme Court held "that nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues such as those involved in this case," *id.* at 162, that is, issues such as whether the government's administration of the INA denied the petitioner due process, *id.* at 155. More recently, the Supreme Court cited *Mendoza* for the somewhat broader proposition that "nonmutual offensive issue preclusion is unavailable against the United States." *CASA*, 606 U.S. at 852 n.13 (citing *Mendoza*, 464 U.S. at 155).

In this case, as in *Mendoza*, "the party against whom the estoppel is sought is the United States; but . . . the party who seeks to preclude the government from relitigating the issue [Alberto Rodriguez] was not a party to the earlier litigation." 464 U.S. at 159. Thus, his attempt to bar Federal Respondents from relitigating the issues presented in *Maldonado Bautista* is "nonmutual offensive issue preclusion," which is "unavailable against the United States." *CASA*, 606 U.S. at 852 n.13; *Mendoza*, 464 U.S. at 162.

For this further reason, the Court denies Alberto Rodriguez relief based on the decisions in *Maldonado Bautista*.

### B. Claims Based on Detention under the Wrong Statute

Only Alberto Rodriguez's sixth cause of action explicitly relies on this Court being bound by the decisions in *Maldonado Bautista*. Filing 1 a 13. Nevertheless, three of Alberto Rodriguez's claims are premised on his detention pursuant to the "wrong" provision of the INA, § 1225(b)

---

[4] This statement in *Mendoza* is consistent with this Court's observation in *Ramirez Melgar* that the decision of the court in *Maldonado Bautista* should not "somehow usurp or overrule all other judges in the United States Federal Courts, like this one, who see the issue differently." *Ramirez Melgar*, 2025 WL 3496721, at *14.

rather than § 1226(a), which was the issue purportedly decided on a nationwide basis in *Maldonado Bautista*.

Specifically, Alberto Rodriguez's first cause of action alleges "Violation of 8 U.S.C. § 1226(a) and Associated Regulations," based on his assertion that he was entitled to but has not been provided with a bond hearing, making his continued detention unlawful. Filing 1 at 10–11 (¶¶ 54–57). Alberto Rodriguez's second cause of action alleges "Violation of Fifth Amendment Right to Due Process (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))." Filing 1 at 11 (¶¶ 58–60). Alberto Rodriguez's fifth cause of action alleges "Violation of Administrative Procedure Act (5 U.S.C. § 706)," and alleges in essence, "The BIA's decision in *Matter of Hurtado* is unlawful because it violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law." Filing 1 at 12 (¶¶ 68–70). The BIA's decision in *Matter of Hurtado* was that the applicable statutory provision for detention of undocumented aliens is § 1225(b) not § 1226(a). Thus, these claims fail if the Court determines that Alberto Rodriguez was properly detained under § 1225(b). As mentioned above, Alberto Rodriguez bears the burden of demonstrating by a preponderance of the evidence that his detention is unlawful. *See Maldonado*, 2025 WL 2374411, at *4 (collecting cases).

The Court concludes that for much the same reason the Court denied habeas relief in *Vargas Lopez*, ___ F. Supp. 3d at ___, 2025 WL 2780351, at *7–8, and *Ramirez Melgar*, 2025 WL 3496721, at *10–13, Alberto Rodriguez has failed to carry his burden to show that he was detained under § 1226(a) as a matter of law.

### 1. Sections 1225(b)(2) and 1226(a) Overlap

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court stated,

U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the

Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289. However, this statement does not mean that § 1225(b) and § 1226(a) are mutually exclusive, separating aliens "seeking admission" to whom § 1225(b) applies from aliens "already in the country" to whom § 1226(a) applies.

The Supreme Court interpreted § 1225(b) more specifically as follows:

> As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings*, 583 U.S. at 297. Thus, the Supreme Court did not state that § 1225(b) applies only "to aliens seeking entry into the United States"; rather, the Supreme Court said § 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* As a matter of plain language, the additional aliens to whom § 1225(b) applies besides those "seeking entry" are "alien[s] present in the United States who ha[ve] not been admitted" according to the definition of "applicants for admission" in § 1225(a)(1).

The Supreme Court then addressed § 1226:

> While the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, § 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General

21

to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section." Section 1226(c) in turn states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).

*Jennings*, 583 U.S. at 303. The Supreme Court further explained § 1226's bond provisions as follows:

> [A]s noted, § 1226(a) authorizes the Attorney General to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." As long as the detained alien is not covered by § 1226(c), the Attorney General "may release" the alien on "bond ... or conditional parole." § 1226(a). Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

*Jennings*, 583 U.S. at 306. "[A]lien[s] present in the United States who ha[ve] not been admitted" defined in § 1225(a)(1), to whom § 1225(b)(2) applies, include—as a matter of plain language—the same group of aliens to whom the Supreme Court stated § 1226(a) applies, that is "aliens already present in the United States." *Jennings*, 583 U.S. at 297.

Thus, the Court concludes that the two statues "overlap" as to aliens they cover, like a Venn Diagram. To put it another way, some aliens certainly fall within § 1225(b)(2), even if they may also fall within § 1226(a). Under such circumstances, Respondents may either 1) detain such aliens without the possibility of release on bond under § 1225(b)(2), or 2) detain the aliens under § 1226(a) and provide the permissive possibility of release on bond. The Court will develop its reasons for this conclusion in more detail in the next subsection.

   *2. Alberto Rodriguez May Be Detained under § 1225(b) Even If He Is Also Subject to § 1226(a)*

The IJ concluded that Alberto Rodrigeuz was detained under § 1225(b), so that the IJ had no jurisdiction to decide whether to release Alberto Rodriguez on bond. This was consistent with the conclusion of the BIA in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025):

> Section 236 [8 U.S.C. § 1226] does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly

set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

*Hurtado*, 29 I&N Dec. at 219–220. In *Hurtado*, the BIA held as follows:

> Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300[.]

*Hurtado*, 29 I&N Dec. at 220.

Although the reasoning in *Hurtado* is binding upon the IJ, the *Hurtado* decision is not binding upon this Court in this habeas action. Thus, the legal question this Court must decide is whether Alberto Rodriguez is an alien who may be and was detained under § 1225(b)(2). If Alberto Rodriguez may be and was properly detained under § 1225(b)(2), he was not eligible for a bond hearing in front of the IJ, and he is not entitled to habeas relief from detention in this Court on any of his claims that are dependent upon entitlement to a bond hearing under § 1226(a).

The Court concludes that Alberto Rodriguez is an alien within the "catchall" scope of § 1225(b)(2) subject to detention without possibility of release on bond through a proceeding on removal under § 1229a. 8 U.S.C. § 1225(b)(2); *Jennings*, 583 U.S. at 287 ("[Section 1225(b)(2)] serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)."). Alberto Rodriguez is an "applicant for admission" as defined by § 1225(a) in that he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a) (defining "applicant for admission"). He is also an "applicant for admission" consistent with the conclusion of the BIA in *Hurtado* and the Supreme Court in *Jennings*. Just because Alberto Rodriguez illegally remained in this country for years does

23

not mean that he is suddenly not an "applicant for admission" under § 1225(b)(2). As the Court pointed out above, at the hearing, Alberto Rodriguez's counsel admitted that Alberto Rodriguez is in the country illegally; that he has been working in the United States without lawful employment status; that he wishes to remain in the United States; that he has filed an application for relief from removal; and that he intends to stay in the United States. On December 12, 2025, Alberto Rodriguez filed Form I-589, Application for Asylum and for Withholding of Removal and Form EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. Filing 18 at 3 (¶ 16). Thus, even if Alberto Rodriguez might fall within the scope of § 1226(a), he certainly fits within the language of § 1225(b)(2) as well. The Court concludes that the plain language of § 1225(b)(2) and the "all applicants for admission" language of *Jennings* permit the DHS to detain Alberto Ramirez under § 1225(b)(2). *Jennings*, 583 U.S. at 287.

This reading of the overlapping relationship between § 1225(b) and § 1226(a) is not only consistent with the plain language of the two provisions but consistent with the interpretation of the two provisions under *Jennings*. First, § 1226 does not contain language limiting its application "to aliens already present in the United States." *Compare Jennings*, 583 U.S. at 289 (stating that United States immigration law "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."); *id.* at 303 ("As noted, § 1226 applies to aliens already present in the United States."), *with* 8 U.S.C. § 1226(a) (containing no reference to aliens "present" or "already present" in the United States); 8 U.S.C. § 1226(c) (containing no reference to "criminal aliens" "present" or "already present" in the United States). Consequently, the references to "aliens" in § 1226 must be read to mean "alien[s] present in the United States who ha[ve] not been admitted" within the meaning of § 1225(a)(1) and within

24

at least the "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" in § 1225(b)(2). *Jennings*, 583 U.S. at 287.

Thus, Alberto Rodriguez was properly detained under § 1225(b)(2), and his first, second, and fifth causes of action fail as a matter of law.

### C. Due Process Claims

Alberto Ramirez's remaining claims for habeas relief are for violations of due process. These claims do not rely upon the decisions in *Maldonado Bautista*.

#### 1. The Parties' Arguments

Alberto Rodriguez's third cause of action alleges "Violation of Fifth Amendment Right to Due Process (Failure to Provide an Individualized Hearing for Domestic Civil Detention)." Filing 1 at 11–12 (¶¶ 61–65). In it, he argues:

> 61. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person ... of ... liberty ... without due process of law." U.S. Const. amend. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *cf. Dep 't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens' due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S territory, apparently moments after he crossed the border while he was still "on the threshold").

> 62. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

> 63. The Supreme Court, thus, "has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington*, 441 U.S. at 425; *see also Salerno*, 481 U.S. at 755; *Foucha*, 504 U.S. at 81-83; *Hendricks*, 521 U.S. at 357.

> 64. Petitioner will be held without being provided any individualized detention hearing.

65. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

Filing 1 at 11–12.

Alberto Rodriguez's fourth cause of action alleges "Violation of Fifth Amendment Right to Due Process (Substantive Due Process)." Filing 1 at 12 (¶¶ 6–7). In it, he argues:

66. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (i.e., Case 1:25-cv-12664-PBS Document 10 Filed 09/22/25 Page 15 of 19 16 the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas, 533 U.S. at 690; Demore, 538 U.S. at 532-33* (Kennedy, J., concurring).

67. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

Filing 1 at 12.

In response, Federal Respondents read these claims to be challenges to the constitutionality of § 1225. Read that way, Federal Respondents argue that the Supreme Court has recognized Congress's broad power over and immunity from judicial control over expelling aliens from the country and detaining them while doing so. Filing 16 at 2. They argue further that Alberto Rodriguez's temporary detention in no way exceeds that broad power and does not deprive Alberto Rodriguez of due process. Filing 16 at 2; *see also* Filing 16 at 13–15.

2. *Alberto Rodriguez's Detention Does Not Violate Due Process*

The Eighth Circuit Court of Appeals recently explained, "The rule has been clear for decades: "[d]etention during deportation proceedings [i]s ... constitutionally valid." *Banyee v. Garland, 115 F.4th 928, 931 (8th Cir. 2024)* (quoting *Demore v. Kim, 538 U.S. 510, 523 (2003)*). In both *Banyee* and *Demore*, the statute at issue was 8 U.S.C. § 1226(c), which requires mandatory detention. *Id.* (citing *Demore, 538 U.S. at 514*). The Eighth Circuit explained,

[In *Demore*, the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522, 123 S.Ct. 1708; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

*Banyee*, 115 F.4th at 931.

The Eighth Circuit explained further,

It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[ ]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531, 123 S.Ct. 1708. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id.* at 528–29, 123 S.Ct. 1708 (citation omitted); *see Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (drawing the same definite-versus-indefinite distinction); *cf. Borrero v. Aljets*, 325 F.3d 1003, 1008 (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*. *See Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

*Banyee*, 115 F.4th at 932 (emphasis in the original).

The Eighth Circuit then stated,

These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due

> Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead *dissent* in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "*pending*." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933 (emphasis in the original).

For Alberto Rodriguez, like the petitioner in *Banyee*, the deportation proceedings are still pending. *Id.* Although Alberto Rodriguez's detention is pursuant to § 1225(b), that provision like § 1226(c) at issue in *Banyee* does not authorize a bond hearing. *See Jennings*, 583 U.S. at 297 (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"); *id*. at 303 ("Section 1226(c) in turn states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities," and that § 1226(a) excepts from its bond provisions aliens detained pursuant to § 1226(c)). Alberto Rodriguez contends only that he is being held without an individualized detention hearing, but § 1225(b) requires his detention. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and "the government has more flexibility when dealing with immigration." *Banyee*, 115 F.4th at 931 (internal quotation marks and citations omitted). Furthermore, the Supreme Court has already performed the due process balancing test for immigration cases and found that detention is reasonable in the context of determination of whether an alien should be removed. *Id.* at 933 ("These cases leave no room for a multi-factor 'reasonableness' test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. But *Zadvydas* and *Demore* have already done whatever balancing is necessary." (internal quotation marks and citations omitted)). Thus, Alberto

Rodriguez's due process rights have not been violated because there is "a bright-line rule" applicable in his circumstances: "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Id.* (quoting *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion), with emphasis in the original).

Alberto Rodriguez is not entitled to relief on his due process claims.

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Jorge Alberto Rodriguez's Petition for Writ of Habeas Corpus is denied in its entirety.

Dated this 29th day of December, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge